William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Madison Avenue, 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
JOSEPHINE BROWN,                              : ECF
Individually and on Behalf of All Other       : 1: 21 Civ. 1292 (ENV)(MMH)
Persons Similarly Situated,                    :
                                               :
                            Plaintiffs,        :
                                               :
            -against-                          :
                                               :
KF OFFICE LLC d/b/a "At Your Side Home Care   :
Services", AT YOUR SIDE HOME CARE SERVICES,   :
UNIVERSAL HEALTH CARE, LLC d/b/a  "At Your    :
Side Home Care Services",                      :
JAMIE LUCHS and JOHN DOES #1-10,              :
                                               :
                            Defendants.        :
-----------------------------------------------------------------------X

**PLAINTIFF'S MOTION ON CONSENT FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE INCENTIVE AWARD**

Dated: August 31, 2023

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078
Attorney for Plaintiffs

# TABLE OF CONTENTS

                                                                              Page

I.      INTRODUCTION………..………………………………………………………..  1

II      BACKGROUND OF THE LITIGATION AND THE SETTLEMENT……………...  2

III.    THE SETTLEMENT……………………………………………………………  5

ARGUMENT

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR PURPOSES
        OF THE SETTLEMENT………………………………………………………..  7

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD
        BE APPROVED IN ALL RESPECTS………………………………………….   10

        A.      The Settlement Is Procedurally Fair and Should Be Approved……………….   11

        B.      The Settlement Is Substantively Fair, Reasonable, and Adequate…………….   12

                1.      The Complexity, Expense, and Likely Duration of the Litigation Favor
                        Approval (*Grinnell* Factor 1)

                2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

                3.      The Litigation and Discovery Have Proceeded Far Enough to Allow the
                        Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

                4.      The Settlement Is Fair, Reasonable, and Adequate in Light of the Risks
                        of Establishing Liability and Damages (*Grinnell* Factors 4 and 5)

                5.      There Are Substantial Risks Associated with Maintaining Class
                        Certification Through Trial (*Grinnell* Factor 6)

                6.      Defendant's Ability to Withstand a Greater Judgment Is Neutral
                        (*Grinnell* Factor 7

                7.      The Settlement Fund Is Substantial in Light of the Best Possible
                        Recovery and Well Within the Range of Reasonableness in Light of the
                        Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

        C.      The Settlement of the FLSA Claims Is Appropriate…………………………..   21

        D.      The Notice to Settlement Class Members Was Adequate and
                Satisfied Due Process……………………………………………………………   22

i

VI.    CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED……………......... 23

    A.    Agreed-Upon Fee Is Reasonable Under a Percentage Analysis ……………… 24

    B.    Agreed-Upon Fee Is Reasonable Under the Lodestar Cross-Check Analysis…. 26

    C.    The Quality of Representation…………………………………………………… 28

    D.    Negotiated Attorney's Fee Agreements Are Favored In
          Class Action Settlements…………………………………………..……………… 29

    E.    Class Counsel's Expenses Were Reasonably and Necessarily Incurred…........ 31

VII.    THE INCENTIVE AWARD FOR THE NAMED PLAINTIFF AND THE
       ADMINISTRATOR FEE ARE BOTH REASONABLE AND SHOULD BE
       AWARDED..……………………………………………………………………... 31

CONCLUSION………………..………………………………………………………….. 32

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Acevedo v. Workfit Medical* LLC,
    187 F. Supp. 3d 370, 379 (W.D.N.Y. 2016)…………………………………………… 10

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. 41, 48-49 (E.D.N.Y. 2010)…………………………………………… 8

*Amchem Prods. v. Windsor*,
    521 U.S. 591, 501, 620 (1997)…………………………………………… 7

*Andryeyeva v. New York Health Care, Inc.*,
    33 N.Y.3d 152, 164 (2019)…………………………………………… 17

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v.*
    *Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)…………………………………………13, 16

*Azogue v. 16 for 8 Hosp. LLC*,
    No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016)……………………….. 26

*Babcock v. C. Tech Collections, Inc.*,
    No. 1 Civ. 3124 (MDG), 2017 WL 1155767, at *6 (E.D.N.Y. Mar. 27, 2017)……… 15

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467, 473 (S.D.N.Y. 2013)…………………………………………… 8, 22

*Bodon v. Domino's Pizza, LLC*,
    No. 09 Civ. 2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015)……………. 20

*Bonn-Wittingham v. Project OHR, Inc.*,
    792 F. App'x 71, 74-75 (2d Cir. 2019)…………………………………………… 17

*Bueso v. Jennings Gate Rest., Inc.*,
    2019 U.S. Dist. LEXIS 133847 (E.D.N.Y. August 7, 2019)……………………… 1

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,
    2019 U.S. Dist. LEXIS 102840, at *18, 34-35 (E.D.N.Y. June 18, 2019),
    report & recommendation adopted, 2019 U.S. Dist. LEXIS 111538
    (E.D.N.Y. July 3, 2019)…………………………………………… 27

*Chavarria v. New York Airport Serv., LLC*,
    875 F. Supp. 2d 164, 171 (E.D.N.Y. 2012)…………………………………………… 11

*Chex v. CCI Contr., Inc.,*
　　2022 U.S. Dist. LEXIS 139836 at *24 (E.D.N.Y. Aug. 5, 2022)………………… 27

*Cohan v. Columbia Sussex Management, LLC,*
　　No. CV 12-3203, 2018 WL 4861391, at *6 (E.D.N.Y. Sept. 28, 2018)…………… 32

*In re Continental Illinois Securities Litigation,*
　　962 F.2d 566 (7th Cir. 1992)………………………………………………………… 30

*In re Copley Pharmaceutical, Inc.,*
　　1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998)…………………………………………… 29

*Cotton v. Hinton,*
　　559 F.2d 1326, 1331 (5th Cir. 1977)………………………………………………… 11

*D'Amato v. Deutsche Bank,*
　　236 F.3d 78, 85 (2d Cir. 2001)……………………………………………………… 10-13

*Davidson v. Cnty. of Nassau,*
　　2023 U.S. Dist. LEXIS 141561  (E.D.N.Y. August 14, 2023)…………………… 1

*Detroit v. Grinnell Corp.,*
　　495 F.2d 448, 463 (2d Cir. 1974)…………………………………………………… 10

*Dover v. British Airways, PLC (UK),*
　　323 F. Supp. 3d 338, 349-50 (E.D.N.Y. 2018)…………………………………….. 13

*Dupler v. Costco Wholesale Group,*
　　705 F. Supp. 2d 231, 239-40 (E.D.N.Y. 2010)……………………………………… 15

*Ebbert v. Nassau County,*
　　No. CV 05-5445, 2011 WL 6826121, at *19 (E.D.N.Y. Dec. 22, 2011)…………… 32

*Fears v. Wilhelmina Model Agency, Inc.,*
　　No. 02 Civ. 4911, 2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005)……. 32

*Frank v. Eastman Kodak Co.,*
　　228 F.R.D. 174, 185 (W.D.N.Y. 2005)……………………………………………… 16

*Garcia v. Pancho Villa's of Huntington Village, Inc.,*
　　2012 U.S. Dist. LEXIS 144446, 2012 WL 5305694, at *8 (E .D.N.Y. Oct. 4, 2012)… 25

*Goldberger v. Integrated Res., Inc.,*
　　209 F.3d 43 (2d Cir. 2000)……………………………………………………… 10, 25

*Gonqueh v. Leros Point To Point, Inc.,*
　　No. 14 Civ. 5883, 2016 WL 791295, at *3 (E.D.N.Y. Feb. 26, 2016)……………… 12

*Granada Invest., Inc.*,
　　962 F.2d at 1206 (6th Cir. 1992)…………………………………………………………… 21

*Hall v. ProSource Technologies, Inc.*,
　　No. 14-cv-2502, 2016 WL 1555128, at *7 (E.D.N.Y. Apr. 11, 2016)………….. 18-19

*Heredia v. Americare, Inc.*,
　　No. 17-cv-6219, 2020 WL 3961618, at *8-11 (S.D.N.Y. July 13, 2020)………… 17

*Hypolite v. Health Care Servs. of New York, Inc.,*
　　16-cv-04922 (S.D.N.Y. 2017)(JGK)…………………………………………………….. 6

*In re IMAX Securities Litig.*,
　　283 F.R.D. 178, 187 (S.D.N.Y. 2012)…………………………………………………… 9

*Johnson v. Georgia Highway Express, Inc.,*
　　488 F.2d 714, 720 (5th Cir. 1974)…………………………………………………….. 30

*Joseph v. HDMJ Restaurant, Inc.,*
　　970 F. Supp. 2d 131, 2013 WL 4811225, at *19 (E.D.N.Y. 2013)………………… 27

*Kazadavenko v. Atlantic Adult Day Care Center, Inc.*,
　　2022 WL 2467541 at *4 (E.D.N.Y. Apr. 14, 2022)………………………………… 25

*Kochilas v. National Merchant Services, Inc.*,
　　No. 14-cv-00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015)……………… 22

*Lai v. Journey Preparatroy Sch., Inc.,*
　　2022 U.S. Dist. LEXIS 151260, 2022 WL 3327824 (E.D.N.Y. May 26, 2022)……. 25

*Lizondro-Garcia v. Kefi LLC*,
　　No. 12 Civ. 1906, 2014 WL 4996248, at *3 (S.D.N.Y. Oct. 7, 2014)……………… 7, 22

*In re Lupron® Mktg. & Sales Practices Litig.,*
　　No. 01-cv-10861-RGS, 2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005)… 28

*Malchman v. Davis*,
　　 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986)………… 30

*Maley v. Del Global Techs. Corp.*,
　　186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002)………………………………… 14, 26, 28

*Marisol A. v. Giuliani,*
　　126 F.3d 372, 376 (2d Cir. 1997)……………………………………………………… 8

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
  671 F. Supp. 819, 829 (D. Mass. 1987)…………………………………………… 30

*McBean v. City of New York*,
  233 F.R.D. 377, 2006 U.S. Dist. LEXIS 5003 (S.D.N.Y. 2006)…………………….. 29

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411, 417 (2d Cir. 2010)…………………………………………………… 24

*McLaughlin v. ICT Energy*,
  2018 U.S. District LEXIS 128347 (E.D.N.Y. July 30, 2018)……………………… 27

*McReynolds v. Richards-Cantave*,
  588 F.3d 790, 803 (2d Cir. 2009)…………………………………………………… 11

*In re MDC Holdings Sec. Litig.*,
  [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474 (S.D. Cal. Aug. 30, 1990). 29

*Meo v. Lane Bryant, Inc.,*
  2020 U.S. Dist. LEXIS 126921 (E.D.N.Y., July 17, 2020)…………………………. 25

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010)………………………………………… 20

*Moreno v. Future Health Care Servs., Inc.,*
  2020 NY Slip Op. 04473, ¶¶ 1-2 (2d Dep't Aug. 12, 2020)………………………… 19

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012)…………… 9,17

*In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y.1998)……. 26

*Nasimova v Attentive Home Care Agency Inc.,*
  16 Civ. 01005 (SJ) (PK)(E.D.N.Y. 2016)……………………………………….. 6

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104, 129 (S.D.N.Y. 1997)……………………………………………… 16

*Polk v. N.Y. State Dep't of Corr. Servs.,*
  722 F.2d 23, 25 (2d Cir. 1983)……………………………………………………… 27

*Puglisi v. TD Bank, N.A.,*
  2015 U.S. Dist. LEXIS 100668, 2015 WL 4608655 (E.D.N.Y. July 30, 2015)…….. 25

*Palacio v. E\*Trade Financial Corp.,*
  2012 U.S. Dist. LEXIS 88019, 2012 WL 2384419 (S.D.N.Y June 22, 2012)……… 25

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11, 58 (E.D.N.Y. 2019)…………………………………………… 23

*In re Polanco*,
    626 B.R. 12 (Bankr. E.D.N.Y. 2021)……………………………………… 27

*Polar Int'l Brokerage Corp. v. Reeve*,
    187 F.R.D. 108, 112-13 (S.D.N.Y. 1999)……………………………………….. 7

*In re Prudential Secs. Inc. Ltd. Partnerships Litig.*,
    163 F.R.D. 200, 210 (S.D.N.Y. 1995)……………………………………… 14

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
    818 F.2d 278, 283 (2d Cir. 1987)…………………………………………… 31

*Reid v. SuperShuttle Intern., Inc.*,
    No. 08 Civ. 4854 (JG) (VVP), 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012)…….. 13

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658, 668 (S.D.N.Y. 1977)………………………………………… 20

*In re RJR Nabisco*,
    M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702
    (S.D.N.Y. Aug. 24, 1992)………………………………………………… 27

*Romero v. Westbury Jeep Chrysler Dodge, Inc.*,
    No. 15 CV 4145, 2016 U.S. Dist. LEXIS 46462, 2016 WL 1369389
    (E.D.N.Y. Apr. 6, 2016)…………………………………………………… 25

*Sheet Metal Workers Nat'l Pension Fund v. Evans*,
    No. 12 Civ. 3049, 2014 U.S. Dist. LEXIS 80118, 2014 WL 2600095
    (E.D.N.Y. Jun. 11, 2014)………………………………………………… 31

*Sierra v. Spring Scaffolding LLC*,
    No. 12 Civ. 05160, 2015 WL 10912856, at *5 (E.D.N.Y. Sep. 30, 2015)………… 18

*Simmons v. N.Y. City Transit Auth.*,
    575 F.3d 170, 175-76 (2d. Cir. 2009)………………………………………… 27

*Sixty-One Thousand Nine Hundred Dollars and No Cents*,
    856 F. Supp. 2d 484, 494 (E.D.N.Y. April 5, 2012)………………………………… 28

*In re Sinus Buster Products Consumer Litig.*,
    No. 12-CV-2429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)…………………… 15

*Slomovics v. All for a Dolla, Inc.*,
    906 F. Supp. 146, 150 (E.D.N.Y.)…………………………………………… 15

*Stieberger v. Sullivan*,
    792 F. Supp. 1376, 1377, *modified*, 801 F. Supp. 1079 (S.D.N.Y. 1992)………….    14

*Strougo v. Bassini*,
    258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003)…………………………………………    18

*Strougo ex re. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003)…………………………………………    11

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277, 281 (S.D.N.Y. 1993)……………………………………………    11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099, 1103 (S.D.N.Y. 1989)…………………………………………    20

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783, at \*6 (S.D.N.Y. June 25, 2007)………………  18

*Villanueva v. 179 Third Ave. Restaurant Inc.*,
    2018 U.S. Dist. Lexis 116379 (S.D.N.Y.  July 12, 2018)……………………………  26

*Villar v. Ahrc Home CARE Servs., Inc.*,
    2020 U.S. Dist. LEXIS 245780 at \*1 (S.D.N.Y. November 6, 2020)………………    1

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003)…………………………………………    15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)………………………………………………………..    10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516, 537 (3d Cir. 2004)…………………………………………………    15

*In re Warner Comms. Sec. Litig.*,
    618 F. Supp. 735, 749 (S.D.N.Y. 1985)……………………………………………    29

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
    899 F. Supp. 1297, 1304 (D.N.J. 1995), aff'd, 66 F.3d 314 (3d Cir. 1995)………...    27

*In re WorldCom, Inc. ERISA Litig.*,
    2005 U.S. Dist. LEXIS 28686, 2005 WL 3101769 (S.D.N.Y. Nov. 21, 2005)……    24

*Wright v. Stern*,
    553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)…………………………………………    15

**STATUTES, RULES AND REGULATIONS**

Class Action Fairness Act…………………………………………………………….    5

Fair Labor Standards Act (FLSA)…………………………………………………  passim

Federal Rules of Civil Procedure
Rule 23.. …………………………………………………………………………..  passim

N.Y. Lab. Law §198……………………………………………………………… passim

**PLAINTIFF'S MOTION ON CONSENT FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE INCENTIVE AWARD**

Under Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff JOSEPHINE BROWN ("Plaintiff" or "Named Plaintiff") applies to this Court for Final Approval of Settlement, Certification of Settlement Class, An Award of Attorney's Fees and Expenses and a Representative Incentive Award in this class action wage litigation ("Litigation" or "Action") as more specifically set forth previously in Plaintiffs' Application for Preliminary Approval ("Plaintiffs' Motion for Preliminary Approval").

I.      **INTRODUCTION**

Plaintiffs submit this memorandum in support of this motion for formal approval of the settlement reached in this litigation.  By order dated March 20, 2023, the Hon. Marcia N. Henry, United States District Court, Southern District of New York, granted preliminary approval to the settlement and conditionally certified this matter as a class action ("Preliminary Order").  The settlement is in the sum of $370,112.43.

Numerous courts in the Second Circuit have approved class and collective settlements. *See Villar v. Ahrc Home CARE Servs., Inc.* 2020 U.S. Dist. LEXIS 245780 at *1 (S.D.N.Y. November 6, 2020) (approving class and collective wage settlement and opt into collective by endorsing check); *Davidson v. Cnty. of Nassau*, 2023 U.S. Dist. LEXIS 141561  (E.D.N.Y. August 14, 2023) (approving class and collective settlement of wage claims and one third legal fee); *Bueso v. Jennings Gate Rest., Inc.,* 2019 U.S. Dist. LEXIS 133847 (E.D.N.Y. August 7, 2019) (granting settlement of FLSA collective and New York class action).

William C. Rand, acting as Class and Collective Counsel, seeks a legal fee award in the amount of one-third of the settlement amount equal to One Hundred and Twenty-Three

1

Thousand and Three Hundred and Seventy Dollars and Eighty-one Cents ($123,370.81) and reimbursement of his expenses equal to $492. This amount will be paid to Plaintiff's Counsel if the Court approves the fairness of the settlement agreement and the fees and expenses.

## II.    BACKGROUND OF THE LITIGATION AND THE SETTLEMENT

Plaintiff, who was a home health aide, commenced the Litigation by filing a complaint in the United States District Court for the Southern District of New York on March 10, 2021, and filing of an Amended Complaint on August 4, 2021, in which Plaintiff asserted claims under the FLSA, the New York Labor Law ("Labor Law"), the Wage Parity Act, the Wage Theft Prevention Act, and New York contract law, alleging, *inter alia*, failure to pay minimum wages and overtime, failure to pay for the full 24 hours worked by employees who worked 24-hour live in shifts, and failure to provide proper notices under the Wage Theft Prevention Act. For example, the Named Plaintiff alleged that she did not get sufficient meal or sleep breaks during her live-in 24-hour shifts and thus was entitled to receive wages for the 11 hours that Defendants deducted from those shifts. The Named Plaintiff brought the action as a proposed collective action with respect to the FLSA claims and a proposed class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with regard to the state and local law claims. Defendants have denied any liability or wrongdoing, and indicated that they intended to vigorously defend themselves against the claims if the Parties were not able to effectuate a fair and reasonable settlement. Defendants continue to deny any liability or wrongdoing of any kind whatsoever associated with the claims alleged in this action, and nothing contained herein shall be deemed a presumption, concession or admission by Defendants of any liability or wrongdoing as to any facts or claims alleged or asserted in this action.

For settlement purposes only, the Parties began exchanging putative class wide discovery in February 2022. Defendants produced more than 1,000 pages of documents, including the

Named Plaintiff's and a sample of potential class members' wage and hour records and signed

Wage Theft Prevention Act notices.  Defendants also produced spreadsheets showing payments

of health insurance for employees to satisfy the Wage Parity Act minimum wage provisions.

Prior to entering into the Settlement Agreement, Class Counsel conducted an

investigation relating to the events and transactions underlying Plaintiff's claims.  Class

Counsel's decision to enter into this Settlement Agreement was made with knowledge of the

facts and circumstances underlying Plaintiffs' claims and the strengths and weaknesses of those

claims.  In determining to settle the Action, Class Counsel has analyzed the evidence adduced

during pretrial proceedings and settlement negotiations, and has taken into account the

substantial expense and length of time necessary to prosecute the litigation through class

certification, trial, post-trial motions and likely appeals, taking into consideration the significant

uncertainties in predicting the outcome of this complex litigation.  Class Counsel believes that

the Settlement described herein confers substantial benefits upon the Class Members.  Based

upon consideration of these factors, and others, Plaintiff's Counsel has concluded that it is in the

best interest of Plaintiff, and the Class Members to settle the Litigation on the terms described

herein, and that such Settlement is fair, reasonable and adequate to the Class.

Class Counsel believes that if the Litigation were not settled, and (1) the Court certified

the Litigation as a class action over Defendants' opposition, (2) the Litigation  proceeded to trial,

and (3) the individually named Plaintiff, and the Class Members prevailed on every claim and

contention asserted, the recovery by judgment could be greater than the recovery under the

Settlement.  However, Class Counsel considered that there was a substantial risk that, if the

Litigation proceeded, class certification would not be granted, and that, even if certification were

granted, Plaintiff, and the Class Members might not have prevailed on any or all of their claims.

Plaintiff's Counsel also considered the likelihood that Defendants would appeal any adverse

rulings, which would, at a minimum, substantially delay any recovery and present a risk that such rulings would be reversed in Defendants' favor. Plaintiff's Counsel also considered the risk that Defendants might not have the assets to satisfy a class judgment.

Defendants deny all allegations of wrongdoing or liability whatsoever. Defendants desire to settle and terminate all existing or potential claims against them, which were, or could have been, asserted in the Action, without in any way acknowledging any fault or liability, in order to eliminate the expense and uncertainty of protracted litigation. The Settlement Agreement is not, and shall not be construed or be deemed to be, evidence or an admission or a concession on the part of Defendants of any fault or liability or damages whatsoever, and Defendants do not concede any infirmity in the defenses which they have asserted or could have asserted in the Action.

On August 29, 2022, Plaintiff moved for preliminary approval of the settlement and conditional certification of the proposed class. (Dkt. No. 35)  On March 20, 2023, the Court granted preliminary approval of the settlement and provisionally certified the Settlement Class pursuant to Federal Rule of Civil Procedure 23. (Dkt. No. 37.)  On September 29, 2022, Defendants sent notices to federal and state authorities as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d). (Declaration of Douglas J. Klein ("Def. Dec.") at ¶ 2.) The 90-day CAFA notice period concluded on December 28, 2022. Def. Dec.  On April 19, 2023, the Class and Collective Settlement Notice was mailed to Class Members. (Declaration of Emilio Confico ("Administrator Dec.") at ¶ 7).  No Class Member opted out of the Settlement or Objected to the Settlement and only the following four Class Members' mailing of notice was unable to be completed: Kenold Glosy, Jose Iglesias, Sarthe Remy and Milagro Cruz Rodriguez. (Administrator Dec. at ¶¶ 9.10).  These four Class Members are thus not Participating Class

Members and will not be subject to the Settlement terms and their potential claims will not be released.

### III.    THE SETTLEMENT.

####       A.    Settlement Class.

Class Members subject to the provision concerning class action treatment under Fed. R. Civ. P. Rule 23 consist of all individuals employed by the Corporate Defendants as home health aides at any time from March 10, 2015 (6 years prior to complaint filing date) through December 31, 2021.  (See Settlement Agreement attached to the Rand Declaration as Exh. A and the Preliminary Approval Order (Docket #37)).

####       B.    Settlement Consideration

The settlement consideration pursuant to the Settlement Agreement is as follows:

**Proposed Monetary Terms**

The Corporate Defendants agree to pay a total settlement amount of $370,112.43 to settle the claims of the Class.  The payment amounts shall be allocated as described in the Settlement Agreement (See Exh. D to the Settlement Agreement) and are allocated in a fair way among the claimants based on their different claims. The settlement finally reached was reached as a compromise.  Certain of the Class Members allegedly not properly paid spread of hours pay when they otherwise should have been are being paid 100% of their spread of hours damages alleged including 100% punitive damages and interest at 9%.  All Class Members who worked live in shifts during the period at issue are also recovering 1.5 hours of wages for each 24 hour live in shift worked which equals a recovery of nearly 14% of total potential damages (1.5 hours /11 hours).  Each Class Member is also guaranteed a minimum settlement of $194.00.

Although the recovery for the 24 hours claims is estimated to be below twenty percent of the potential judgment that Plaintiff might obtain if the class were certified and the Class

Members were to win at trial on all its claims, the Settlement is fair in light of the challenge the Class Members faced in proving that they did not get sleep or breaks during their 24-hour live in shifts. Employers are permitted to deduct from 24-hour live in shifts 8 hours of sleep if the health aide receives 8 hours of sleep and at least 5 hours of uninterrupted sleep and 3 hours of meal breaks if the aide gets 3 hours of meal breaks.

In this case, there were few or no contemporaneous records kept related to sleep and breaks, and accordingly, Plaintiff and Class Members would have relied on oral testimony to prove their case. Furthermore, Defendants contend that there is ample evidence in the record that aides, including Named Plaintiff, were receiving sufficient meal and sleep breaks for (at a minimum) the majority of live in shifts worked, and that Corporate Defendants had a policy requiring aides to document any shifts during which they did not receive such breaks. Also, Defendants contend that when aides indicated they did not get sleep and/or breaks, they were paid by Corporate Defendants for extra hours. In light of the litigation risks posed by these defenses to both the certification and merits of Plaintiff's 24-hour shift claims, the proposed settlement allocation is fair. See *Hypolite v. Health Care Servs. of New York, Inc.,*16-cv-04922 (S.D.N.Y. 2017)(JGK) (Approving settlement of $4 million for class of over 10,000 health aides including their 24 hour claims, approving less than 10% recovery on 24-hour live in shift claim); *Nasimova v Attentive Home Care Agency Inc.,* 16 Civ. 01005 (SJ) (PK)(E.D.N.Y. 2016) (approving settlement for thousands of home health aides, approving settlement equal to 8% of 24-hour live in claim damages)

No amounts have been allocated to Wage Theft Prevention Act ("WTPA") damages as Corporate Defendants' records show that they maintained signed notices as required by the WTPA. Furthermore, no monies were allocated to Wage Parity Act minimum wage damage as

6

Corporate Defendants' records showed that they properly paid for health insurance in satisfaction of the Wage Parity Act minimum wage requirements.

**Release of Claims**

In return for the above consideration, the Plaintiff and all Class Members, who have received notice of the settlement who have not chosen to opt out, release all claims under the New York Labor Law including unpaid regular and overtime wages, wage notice and wage statement violations, call-in pay, spread of hours, and attorneys' fees and costs related to such claims based on events occurring from the beginning of time through December 31, 2021. Class Members who cash their settlement checks are collective plaintiffs who release their claims under the Federal Fair Labor Standards Act. See Settlement Agreement.

## ARGUMENT

### IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT

Certification of the Settlement Class is appropriate to effectuate a settlement of Plaintiff's and Settlement Class Members' claims against Defendants. Indeed, the benefits of the Settlement can be realized only through the certification of a Settlement Class, and the Supreme Court of the United States has emphatically confirmed the viability of such settlement classes. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 112-13 (S.D.N.Y. 1999).

In granting preliminary certification of the Settlement Class, this Court has already determined that the requirements of Rule 23 are met, (*see* Dkt. No. 37 ¶ 2), and there is no reason for the Court to disturb that conclusion. *See Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 WL 4996248, at *3 (S.D.N.Y. Oct. 7, 2014) (granting final certification of class for settlement purposes where "no facts have been presented to [the court] to indicate that [its] preliminary determination was incorrect"). The Settlement Class meets the criteria of Rules

23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes, as set forth below and in greater detail in Plaintiff's motion for preliminary approval of the Settlement. (*See* Dkt. No. 79 at 13-17.)

*Numerosity:* The Settlement Class, which consists of 335 members, is sufficiently numerous and joinder of all Settlement Class Members is impractical. *See* Fed. R. Civ. P. 23(a)(1); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed where class has 40 or more members).

*Commonality and Typicality:* The claims of the Plaintiff and each of the Class Members are predicated on the alleged failure of Defendants to pay minimum, spread of hours, regular and/or overtime wages. In order to prevail, therefore, the Plaintiff and each member of the Class will be required to make the same factual presentation and legal argument with respect to common questions of liability—including whether Defendants' pay practices with respect to 24-hour shifts, overtime work, and wage statements violated federal, state, and/or local wage-and-hour laws—regardless of the circumstances which may affect their amount of damages on an individualized basis. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (commonality satisfied where class members' claims "share a common question of law or fact"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013) (class members shared common issues of law and fact regarding whether defendant failed to pay overtime wages). Moreover, Plaintiff's claims are typical of those of the Class because she was employed by the Defendants during the relevant time period and alleges the same violations of federal, state, and local wage and hour law. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 48-49 (E.D.N.Y. 2010) (typicality met where claims arise from same alleged conduct, namely failure to pay overtime wages). Accordingly, for settlement purposes, the commonality and typicality requirements are both met.

*Adequacy:* The adequacy requirement also is satisfied for purposes of the settlement, as both Plaintiff and Plaintiff's Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members. Plaintiff has zealously pursued the claims against the Defendants for their alleged wrongful conduct. (Rand Declaration). For purposes of settlement, Plaintiff possesses the same interests and has suffered the same injury as other Class Members. Given the identical aspects of claims among Plaintiff and the Class Members set forth above, there is no potential for conflicting interests in this action. *See In re IMAX Securities Litig.*, 283 F.R.D. 178, 187 (S.D.N.Y. 2012) (lead plaintiff adequate where court found "no reason to believe that lead plaintiff's interests are in conflict with those of the other members of the settlement class"). At the same time, Plaintiff's Counsel has diligently pursued the interests of Plaintiff and the Class. Plaintiff's Counsel is a well-regarded member of the legal community, has broad experience in class action lawsuits and, in particular, has broad experience in complex wage and hour litigation. (Rand Declaration).

*Rule 23(b)(3) Requirements:* The predominance and superiority requirements of Rule 23(b)(3) are met as well for purposes of the settlement only. Plaintiff's and Class Members' claims are all founded upon a common legal theory that Defendants failed to pay class members adequate wages and provide proper wage notices in violation of NY Labor Law, the Wage Parity Act, the NYC Admin Code, and/or the FLSA, issues that predominate over any questions subject only to individualized proof. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (predominance satisfied where class members shared "common factual allegations that Defendant had a policy of not paying Class Members overtime" and a "common legal theory—that these policies violated the NYLL," because "[t]hese common issues predominate over any issues affecting only individual Class Members"). Moreover, it is clear that resolution of these claims through class-wide settlement is superior to individual

9

adjudication of each of the Settlement Class Members' claims.  In particular, the Settlement

provides Plaintiff and Settlement Class Members with an ability to obtain a predictable, certain,

and defined relief in a timely manner.  By contrast, litigation carries great uncertainty, and the

costs and burdens of individual litigation are likely to be prohibitive in light of the comparatively

small damages allegedly suffered by each individual member of the settlement class.  *See*

*Acevedo v. Workfit Medical* LLC, 187 F. Supp. 3d 370, 379 (W.D.N.Y. 2016) (class-wide

settlement satisfied superiority requirement where commencement of individual actions

regarding overtime wages would be cost-prohibitive).  Settlement will also relieve judicial

burdens that would be caused by repeated adjudication of the same issues in many individualized

trials against Defendants.

 For these reasons, and given that the Court already has conditionally certified the

Settlement Class, the Court should grant final certification of the Settlement Class.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS

 Final approval of a class action settlement is appropriate where the settlement is "fair,

reasonable, and adequate."  Fed. R. Civ. P.  23(e).  In making this determination, courts must

evaluate the settlement's procedural and substantive fairness.  *See Wal-Mart Stores, Inc. v. Visa*

*U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (court required to consider "the settlement's terms

and the negotiating process leading to settlement").  In assessing procedural fairness, courts

examine the process of negotiation leading up to the settlement.  *Id.*; *see also D'Amato v.*

*Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  In assessing substantive fairness, courts in this

Circuit analyze the settlement's terms according to the factors set forth in *Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

 When determining whether to grant final approval to a class action settlement, courts

should review such settlements in light of the "strong judicial and public policies that favor settlement." *Strougo ex re. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003); *see also Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 171 (E.D.N.Y. 2012) ("Settlements are strongly favored as a matter of policy, because by lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time." (internal citations and quotation marks omitted)).  This policy applies with particular force to class-action lawsuits, the complexity and expenses of which impose special burdens borne by the judicial system as well as the litigants.  *See, e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (noting the "strong judicial policy in favor of settlement, particularly in the class action context"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").

In evaluating whether a proposed settlement is adequate under Rule 23, courts give considerable weight to the views of experienced counsel as to the merits of a settlement.  *See, e.g., D'Amato*, 236 F.3d at 86; *Cotton* 559 F.2d at 1330 (in assessing proposed settlement, the court "is entitled to rely upon the judgment of experienced counsel for the parties").  Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

### A.    The Settlement Is Procedurally Fair and Should Be Approved

Courts evaluate whether a settlement is procedurally fair based on the "negotiating process by which the settlement was reached." *D'Amato*, 236 F.3d at 85 (citation omitted).  Courts have also recognized "a presumption of fairness, reasonableness, and adequacy" where a settlement is the result of "arm's length negotiations between experienced, capable counsel after

11

meaningful discovery," such that counsel can properly evaluate the merits of the claims and defense. *McReynolds*, 588 F.3 at 803 (internal quotations and citations omitted).

The settlement here readily meets this standard. The Parties engaged in extensive arms-length negotiation over the course of numerous months, during the course of which Defendants produced detailed records regarding potential class members and the hours and shifts worked. (Rand Declaration at ¶¶7-9.) Plaintiff's Counsel performed an in-depth analysis of the evidence adduced during pretrial proceedings and settlement negotiations in order to assess the value of the claims in light of the substantial expense and length of time necessary to prosecute the litigation through class certification, trial, post-trial motions and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation. *Id.*

The settlement was ultimately reached after numerous offers and counter offers were made and considered. The settlement ultimately reached by the Parties was the result of a fair and adequate process. *See Gonqueh v. Leros Point To Point, Inc.*, No. 14 Civ. 5883, 2016 WL 791295, at *3 (E.D.N.Y. Feb. 26, 2016) (finding settlement to be fair, reasonable, and adequate where it was "reached as the result of intensive, arms-length negotiations).

Accordingly, the Court should conclude that the Settlement is procedurally fair.

**B.    The Settlement Is Substantively Fair, Reasonable, and Adequate**

In determining whether a class action settlement is substantively fair, courts in the Second Circuit look to the "*Grinnell* factors," which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 349-50 (E.D.N.Y. 2018) (quoting

*Grinnell*, 495 F.2d at 463). Taken together, these factors weight strongly in favor of final

approval of the Settlement.

> **i.** **The Complexity, Expense, and Likely Duration of the Litigation Favor Approval (*Grinnell* Factor 1)**

Under the first *Grinnell* factor, courts must weigh the benefits of a potential settlement

against the time, expense, and burden of continued litigation. The proposed Settlement grants

Class Members timely relief without their having to endure the risk, complexity, duration, and

expense associated with continuing this action. "Most class actions are inherently complex and

settlement avoids the costs, delays and multitude of other problems associated with them." *In re*

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub.*

*nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). This case is no exception, with

nearly 14,500 class members and multiple claims under state and federal law.

This case has already been pending for two years, and absent a settlement, further

litigation would result in significant additional expense and delay. Developments in the case

law—in particular, the New York Court of Appeals decision in *Andryeyeva*—have made

Plaintiff's central claim regarding unpaid overtime for 24-hour live-in shifts substantially more

fact-intensive, which in turn will make the each phase of the litigation more time-consuming,

expensive, and risky for Class Members. Proceeding with the litigation on a class-wide basis

would require the Parties to engage in substantial additional discovery relating to liability and

damages as well as to Defendants' affirmative defenses; to brief and defend motions for

summary judgment relating to a number of disputed legal issues; to conduct a fact-intensive trial;

and potentially to pursue appeals from that judgment. All of these steps would involve

significant time and expense for both Parties. *See Reid v. SuperShuttle Intern., Inc.*, No. 08 Civ.

4854 (JG) (VVP), 2012 WL 3288816, at *2 (E.D.N.Y. Aug. 10, 2012) (factor favors approval

because "[a]bsent a settlement, this case would likely take substantial time and resources to resolve. There would be the completion of additional discovery, briefing and argument of motions for summary judgment and for class certification (and, with class certification, potential appeals) and eventually, perhaps, a lengthy trial followed by further appeals.").

The settlement, by contrast, provides an assured and prompt resolution to this litigation that will deliver monetary relief to class members in the near term, rather than at some uncertain point in the future. Settling this dispute will enable the Parties to focus their resources and energies elsewhere rather than on continued litigation. *See In re Prudential Secs. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (noting that settlement provides "expeditious route to recovery for the class" in lieu of the "lengthy, costly, and uncertain course of further litigation," and noting that in such circumstances "it may be preferable to take the bird in the hand instead of the prospective flock in the bush" (internal citations and quotations omitted)); *Stieberger v. Sullivan*, 792 F. Supp. 1376, 1377, *modified*, 801 F. Supp. 1079 (S.D.N.Y. 1992) (approving settlement, noting that "compromises represented therein constitute a reasonable balance, especially bearing in mind the length of time that would elapse, absent a settlement, before any concrete benefits could be delivered to any class member").

Accordingly, the complexity and expense of this litigation and the expected duration of advancing the case to trial and through appeal in the absence of settlement weigh heavily in favor of final approval of the Settlement.

### ii.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). Indeed, the lack of objections from class members "may itself be taken as evidencing the fairness of the settlement." *Slomovics v. All for*

*a Dolla, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y.).

Here, not a single member of the class has opted out of the class or objected to the settlement, and the deadline for doing so has expired. (Administrator Declaration at ¶ 10). This overwhelmingly positive response provides strong evidence that the settlement is fair and adequate. *See, e.g.*, *Dupler v. Costco Wholesale Group*, 705 F. Supp. 2d 231, 239-40 (E.D.N.Y. 2010) (finding that "a small number of class members seeking exclusion or objecting indicates an overwhelmingly positive reaction of the class"); *Babcock v. C. Tech Collections, Inc*., No. 1 Civ. 3124 (MDG), 2017 WL 1155767, at *6 (E.D.N.Y. Mar. 27, 2017) (that out of 3,710 class members none objected to the settlement and only eight sought exclusion "weigh[ed] in favor of approval]"); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) ("[A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Accordingly, this factor weighs in favor of approval. *See Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.")

### iii.   The Litigation and Discovery Have Proceeded Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

In considering this factor, "the relevant inquiry is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re Sinus Buster Products Consumer Litig.*, No. 12-CV-2429, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating"). "[T]he pretrial negotiations and

15

discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (citation omitted). Essentially, the Court must ensure that the settlement agreements are not the product of a quick and uninformed decision-making process.

Here, the Parties' exchange of information and analysis of the respective strengths and weakness of their claims and defenses more than meets this standard. Defendants produced more than 1,000 pages of discovery during the pre-certification phase of the litigation, including payroll records for Plaintiff and a random sample of other potential class members, and copies of Defendants' payroll policies and procedures. (Rand Declaration at ¶¶ 7-8.)

Based on these circumstances, the Parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to Defendant's time and pay practices and where counsel's negotiations had "been in no way collusive"); *Sinus Buster*, 2014 WL 5819921, at *9 (factors weighs in favor of settlement where plaintiffs "reviewed thousands of pages of defendants' documents" and "exchanged written discovery requests and responses"). Accordingly, this factor weighs in favor of final approval.

### iv. The Settlement Is Fair, Reasonable, and Adequate in Light of the Risks of Establishing Liability and Damages (*Grinnell* Factors 4 and 5)

Plaintiff and Plaintiff's Counsel believe that their claims are strong. However, as with any litigation, especially class action litigation, there is inherent risk and uncertainty as to whether they will prevail in the event this case proceeds to trial. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id.* (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

16

In the wake of the New York Court of Appeals' decision in *Andryeyeva*, Class Members face substantial litigation risks in pursuing their central claim that they were not properly compensated for 24-hour live-in shifts. *See Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 164 (2019). The *Andryeyeva* decision makes clear that aides can be paid for only 13 hours out of each 24-hour shift so long as the aide received adequate sleep and meal breaks. *See Andryeyeva*, 33 N.Y.3d at 164. Post-*Andryeyeva*, answering the question of whether aides received bona-fide sleep and meal breaks during each live-in shift requires a fact-intensive inquiry into the detailed working conditions, tasks, and timing of each live-in shift, which in turn creates significant litigation risks. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (noting that "the fact-intensive nature of Plaintiffs' off-the-clock claim presents risk"). In light of these challenges, since *Andryeyeva*, a number of courts have dismissed 24-hour claims, or at a minimum held that such fact-intensive questions could not be resolved at summary judgment and would need to be tried. *See, e.g.*, *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 74-75 (2d Cir. 2019) (affirming dismissal of overtime claims based on live-in shifts in light of lack of evidence that plaintiffs worked more than thirteen hours per shift); *Heredia v. Americare, Inc.*, No. 17-cv-6219, 2020 WL 3961618, at *8-11 (S.D.N.Y. July 13, 2020) (dismissing claims for overtime for live-in shifts based on lack of evidence regarding whether plaintiffs failed to receive adequate sleep and meal breaks).

These fact-intensive defenses pose significant litigation risks if this case were to proceed to trial, and there is substantial uncertainty as to whether class members would be able to obtain any recovery. A "trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under federal and state law, and in light of the defenses available to Defendant, which would pose substantial risk as to both liability and damages." *Hall*

17

*v. ProSource Technologies, Inc.*, No. 14-cv-2502, 2016 WL 1555128, at *7 (E.D.N.Y. Apr. 11, 2016) (internal quotations and citations omitted).

The settlement alleviates this uncertainty.  The settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003); *see also See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) ("The proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial.").  Accordingly, this factor weighs in favor of approval.

### v.  There Are Substantial Risks Associated with Maintaining Class Certification Through Trial (*Grinnell* Factor 6)

There is also a substantial risk as to whether Plaintiff would be able to obtain class certification and maintain it through trial.  Defendant has not consented, except for settlement purposes, to the class treatment of the Plaintiff's claims and would continue to vigorously oppose class certification in the event this litigation were to proceed.  Defendants have already raised defenses to the predominance, commonality, adequacy, and typicality of the Plaintiff's claims, based on, *inter alia*, the need to conduct individualized inquiries regarding the applicability of the companionship exemption, the hours worked during each 24-hour live-in shift, and whether Defendant provided proper wage notices and paystubs.  (*See generally* Dkt. Nos. 34, 57.)  These fact-specific questions pose a substantial hurdle to class certification.  *See, e.g.*, *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 05160, 2015 WL 10912856, at *5 (E.D.N.Y. Sep. 30, 2015) (concluding that there is a "risk of maintaining class status through trial" where defendants will argue "that there are individualized questions as to the job duties and payment structure for the class members that makes certification and ultimately trial on a class-wide basis impractical").  The New York Court of Appeals' decision in *Andryeyeva* confirmed that these questions require

individualized inquiries if policies existed (a) to determine which aides were not able to sleep or take breaks during live in shifts and (b) to pay such aides 24 hours of wages, thereby increasing the risks that Plaintiff would not succeed in prosecuting her claims through trial on a class-wide basis. *See Andryeyeva*, 33 N.Y.3d at 164; *see also Moreno v. Future Health Care Servs., Inc.*, 2020 NY Slip Op. 04473, ¶¶ 1-2 (2d Dep't Aug. 12, 2020) (denying class certification in the wake of *Andryeyeva* on the question of "whether the defendants violated the law by failing to pay [aides] for all hours of a 24-hour shift").

While Plaintiff's Counsel believes class certification of all of the claims in this case is appropriate, it also recognizes that Defendants may be able to raise legitimate objections to such a class certification. Settlement eliminates the risk, expense, and delay associated with certifying and maintaining a class through trial. *See Hall*, 2016 WL 1555128, at *7 (risk of maintaining class favors settlement where class certification likely to be "highly contested" on the basis that there are "individualized questions as to the job duties and payment structure for class and collective members"). Accordingly, this factor favors certification.

### vi. Defendant's Ability to Withstand a Greater Judgment Is Neutral (*Grinnell* Factor 7)

It is unclear whether Defendants could withstand a greater judgment in the event this case proceeds to trial on a class basis. However, even if Defendants could withstand a greater judgment, that fact, on its own, does not suggest that the settlement is unfair or inadequate. *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (explaining "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"). Instead, where a defendant has the ability to withstand a judgment greater than the settlement amount, this factor is neutral. *See id.*; *Hall v. ProSource Technologies, LLC*, No. 14-CV-2502, 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016) (where defendant has ability to withstand greater judgment, this factor "neither

weighs in favor of nor militates against final approval"). In addition, "[c]ourts have recognized that the defendant's ability to pay is much less important than other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

>        vii.    **The Settlement Fund Is Substantial in Light of the Best Possible Recovery and Well Within the Range of Reasonableness in Light of the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

There is no fixed point above or below which a settlement is or is not fair, and courts have repeatedly noted that "[t]he determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum." *Strougo* at 258 F. Supp. 2d at 260; *Bodon v. Domino's Pizza, LLC*, No. 09 Civ. 2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015). Rather, "there is a range of reasonableness with respect to a settlement." *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). When evaluating a class settlement, "the court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1977). Instead, "[d]ollar amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation omitted); *see also Bodon*, 2015 WL 588656, at *6 ("[T]he question . . . is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces."). "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n. 2.

While Plaintiff and Plaintiff's Counsel believes that they would ultimately prevail on the claims, they recognize that there is no guarantee of success if they pursue the claims to trial. For

the reasons discussed above, Plaintiff and Plaintiff's Counsel have determined that this case presents significant risks that militate in favor of a substantial compromise.  (Rand Declaration at ¶ 8).  Defendants have agreed to settle this case for $370,112.43, an amount that will provide a significant monetary benefit to the Settlement Class as a remedy for the alleged labor law violations, and the Settlement ensures that class members will receive their funds promptly.  That a larger recovery for the class is theoretically possible if the case is litigated to the end "is no reason not to approve the settlement."  *Granada Invest., Inc.*, 962 F.2d at 1206 (6th Cir. 1992).  Settlements are found reasonable where they ensure immediate payment of substantial amounts to class members, even if a "speculative payment of a hypothetically larger amount years down the road" is a possibility.  *Strougo*, 258 F. Supp. 2d at 260.

The Settlement provides that each Settlement Class Member will be entitled to payment based on their proportionate share of the individual aggregate damages for the various wage claims alleged in the Amended Complaint.  Given the uncertainty of litigating this action through trial, the amount of money provided by the settlement represents a reasonable and substantial recovery for class members.  In balancing the benefits of the settlement against the attendant risks as well as the significant delay that continued litigation will bring, this factor weighs in favor of approval.

Taken together, these factors confirm that the settlement is substantively fair.  Eight of the nine *Grinnell* factors weigh in favor in favor of final approval and the ninth factor—which is the least important, *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 339—is neutral.  Accordingly, the Court should grant final approval of the Settlement.

### C.    The Settlement of the FLSA Claims Is Appropriate

The Court should also grant final approval of the Settlement to the extent that it resolves the FLSA claims of opt-in members of the Class.  "Because, under the FLSA, parties may elect

21

to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (internal citations and quotation marks omitted); *see also Kochilas v. National Merchant Services, Inc.*, No. 14-cv-00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Kochilas*, 2015 WL 5821631, at *7; *see also Lizondro-Garcia*, 2014 WL 4996248, at *6 (in assessing FLSA settlement, court "simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation"). "Because the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Sierra*, 2015 WL 10912856, at *4 (internal quotations and citations omitted).

Here eight of the nine applicable *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement, and the ninth factor is neutral. In addition, as discussed above, the settlement came about after hotly contested litigation and was the result of an extensive arm's-length negotiation between experienced counsel. (*See supra*). Accordingly, the settlement of the FLSA claims should be approved.

### D.   The Notice to Settlement Class Members Was Adequate and Satisfied Due Process

Due process requires that the court "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "The standard for adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is

measured by reasonableness." *Wal-Mart*, 396 F.3d at 113. "[N]otice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." *Id.* at 114; *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 58 (E.D.N.Y. 2019).

Here, the notice disseminated to the prospective members of the class was reasonably calculated to apprise them of the pendency of the action and give them an opportunity to object and/or opt-out. In accordance with the Court's order preliminarily approving the settlement, and the terms of the Settlement Agreement, court-approved notice was sent by mail to prospective class members using the last known addresses as reflected in Defendants' records. (Administrator Dec. at ¶¶ 4-9). The notice informed class members of the existence of the settlement, directed them to the settlement website where they could obtain additional information, advised them that they could object to or opt-out from the settlement, and apprised them of the deadline for doing so. (Administrator Dec. Exhibit A.)

In its preliminary order approving the settlement, the Court found that the notice plan set forth in the Settlement Agreement "constitutes the best notice practicable under the circumstances, and constitutes valid, due and sufficient notice to all persons in the Class, complying fully with the requirements of Federal Rule of Civil Procedure 23, the Fair Labor Standards (the 'FLSA'), the Constitution of the United States, and any other applicable laws." (Dkt. No. 37 at ¶ 5). Accordingly, because the Claims Administrator complied with all of the obligations with regard to Notice set forth in this Court's Order of Preliminary Approval and the Settlement Agreement, the Court should find that the notice given here was the best means of notice that was practicable under the circumstances and fully satisfied the requirements of due process.

## VI.   CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED

The Parties agreed in the Settlement Agreement that Plaintiff's counsel is entitled to fees in the amount of $123,370.81 (1/3 of settlement) and reasonable expenses.  Attached as Exhibit C to the Rand Declaration are the time and expenses records of William C. Rand with expense receipts.  The fee is reasonable on a percentage basis because it is equal to one-third of the full Settlement value ($123,370.81/$370,112.43) and on a lodestar basis because Class counsel's time spent on the case to date is 253.3 hours which at Plaintiffs' Counsel's $500 per hour rate equals a lodestar of $126,650 which constitutes a multiple of .97 ($123,370.81/$126,650), which is less than one and thus presumed fair.

A court may calculate a reasonable attorney's fee either by determining the lodestar amount or by awarding a percentage of the settlement. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  The overwhelming trend, however, is to award a percentage of the fund. *See In re WorldCom, Inc. ERISA Litig.,* 2005 U.S. Dist. LEXIS 28686, 2005 WL 3101769, at *7 (S.D.N.Y. Nov. 21, 2005). In addition to being far simpler, awarding a percentage of the fund aligns the interest of the class and their counsel by encouraging counsel to resolve cases at an early stage, if possible, while still obtaining the largest possible recovery. *WorldCom*, 2005 U.S. Dist. LEXIS 28686, 2005 WL 3101769, at *7.

In awarding a percentage of the fund, a court considers: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Resources. Inc.,* 209 F.3d 43, 50 (2d Cir. 2000). And the lodestar calculation is used as a '" cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50.

### A.    Agreed-Upon Fee Is Reasonable Under a Percentage Analysis

Employing the "percentage of the fund" method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. *Romero v. Westbury Jeep Chrysler Dodge, Inc.,* No. 15 CV 4145, 2016 U.S. Dist. LEXIS 46462, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases); *Meo v. Lane Bryant, Inc.,* 2020 U.S. Dist. LEXIS 126921 (E.D.N.Y., July 17, 2020) (citing cases);   *Puglisi v. TD Bank, N.A.,* 2015 U.S. Dist. LEXIS 100668, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving one-third of settlement fund award of attorneys' fees in collective action FLSA case with a class settlement fund); *Garcia v. Pancho Villa's of Huntington Village, Inc.,* 2012 U.S. Dist. LEXIS 144446, 2012 WL 5305694, at *8 (E .D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Palacio v. E*Trade Financial Corp.,* 2012 U.S. Dist. LEXIS 88019, 2012 WL 2384419, at *6 (S.D.N.Y June 22, 2012) (approving attorneys' fee award representing one-third of the settlement, noting "the percentage-of-recovery method [ ] is consistent with the trend in this Circuit" (quotation omitted)).  Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Lai v. Journey Preparatroy Sch., Inc*., 2022 U.S. Dist. LEXIS 151260, 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022) ("With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable."); *Kazadavenko v. Atlantic Adult Day Care Center, Inc.*, 2022 WL 2467541 at *4 (E.D.N.Y. Apr. 14, 2022) (collecting cases).

"[I]t is very common to seek 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445; *see also Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent

with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-CV-3693 (PGG), 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *26 (S.D.N.Y. 2013).

Here the fee requested equals one-third of the recovery and thus should be found to be reasonable.

### B.    Agreed-Upon Fee Is Reasonable Under the Lodestar Cross-Check Analysis

Although a court generally may calculate reasonable attorneys' fees by awarding a percentage of the settlement amount, courts recognize that the lodestar calculation should serve as a "cross check" on the reasonableness of a requested percentage. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

The fee is reasonable on a lodestar basis as Class counsel's time spent on the case to date is 253.3 hours which at Plaintiffs' Counsel's $500 per hour rate equals a lodestar of $126,650 which constitutes a multiple of .97 ($123,370.81/$126,650), which is less than one and thus presumed fair.  *See Villanueva v. 179 Third Ave. Restaurant Inc.*, 2018 U.S. Dist. Lexis 116379 at *8 (S.D.N.Y.  July 12, 2018) (J. Nathan) (where lodestar multiplier is less than one, fee is deemed reasonable).

Courts regularly award lodestar multipliers from two to six times lodestar." *Johnson*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (citing *In re Lloyd's Am. Trust Fund Litig.,* 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (stating that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 371 (S.D.N.Y.2002) (explaining that the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y.1998) (awarding multiplier of 3.97 times lodestar)); *Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3

multiplier), aff'd, 66 F.3d 314 (3d Cir. 1995); *In re RJR Nabisco*, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar).

The rate of $500 per hour for the lodestar check is reasonable given the complexity of the action. The biography of William C. Rand is attached as Exhibit B to the Rand Declaration and shows that he has over twenty years of experience prosecuting wage cases and demonstrates that the $500 per hour rate is appropriate.

To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.,* 575 F.3d 170, 175-76 (2d. Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v. HDMJ Restaurant, Inc.,* 970 F. Supp. 2d 131, 2013 WL 4811225, at *19 (E.D.N.Y. 2013) (internal citations omitted); Pinzon, 2012 U.S. Dist. LEXIS 134122, 2012 WL 4174725, at *5.

Courts have found $500 per hour to be a reasonable rate. *Chex v. CCI Contr., Inc.,* 2022 U.S. Dist. LEXIS 139836 at *24 (E.D.N.Y. Aug. 5, 2022) (awarding fees based on $500 per hour in wage and hour litigation); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 2019 U.S. Dist. LEXIS 102840, at *18, 34-35 (E.D.N.Y. June 18, 2019), report & recommendation adopted, 2019 U.S. Dist. LEXIS 111538 (E.D.N.Y. July 3, 2019) (noting that long complex cases litigated by well-experienced counsel warrant a higher hourly rate and awarding $500 and $600 hourly rates for certain attorneys in civil rights matter); *In re Polanco*, 626 B.R. 12, 18, 30-32 (Bankr. E.D.N.Y. 2021) (finding rates of $500 per hour for partner time was reasonable); *McLaughlin v. ICT Energy*, 2018 U.S. District LEXIS 128347 (E.D.N.Y. July 30, 2018) (See Table 7 at end of decision) (court awarded fees in class action based on attorney rates of $550 per hour and $500 per hour); *Sixty-One Thousand Nine Hundred Dollars and No*

*Cents*, 856 F. Supp. 2d 484, 494 (E.D.N.Y. April 5, 2012) (awarding hourly rates of $600 for partner and $400 for associate in forfeiture matter).

In assessing the lodestar for cross-check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Instead, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." Id. Here, approval of the agreed-upon fee will not result in an excessive multiplier. Accordingly, the fee is reasonable because the 253.3 hours worked were reasonable and the fee equals less than 100% of the lodestar.

### C.    The Quality Of Representation

Class Counsel was well-qualified from the outset to pursue this case.  His professional background, qualifications and experience are set forth in the declaration of William C. Rand, Esq. submitted herewith and with the Preliminary Application.  As shown by the declaration, Class Counsel has a great deal of experience in the prosecution and successful resolution of complex class actions, many involving the FLSA and NY Labor Law.

Courts routinely recognize the experience of class action counsel in determining the reasonableness of a fee award. *See In re Lupron® Mktg. & Sales Practices Litig.,* No. 01-cv-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14 (D. Mass. Aug. 17, 2005).  In addition, the quality of representation is commonly measured by the result obtained.  *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

Class Counsel's decision to avoid additional litigation costs and settle at this juncture also supports a finding of effective representation.  A business as usual approach to litigation, with motion practice and protracted discovery skirmishing would have resulted in cost and delay, but would not likely have resulted in greater benefits to the Settlement Class.  As a result, the Settlement Class was well-served by Class Counsel's decision to engage in early settlement

discussions.  *See McBean v. City of New York*, 233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS 5003, at *17-18 (S.D.N.Y. 2006) (where all parties "agree upon the basic facts as they relate to the plaintiff class…class counsel's decision to forgo additional discovery in the hopes of minimizing costs and achieving a quick recovery for their clients…falls within the bounds of 'effective representation'").

Finally, the quality of opposing counsel is also an important factor for the Court to consider in evaluating the quality of services provided by Class Counsel. *See e.g., In re Warner Comms. Sec. Litig.,* 618 F. Supp. 735, 749 (S.D.N.Y. 1985).  Defendants were represented by Jackson Lewis P.C., a prestigious law firm that represents management in labor and employment matters, whose lawyers negotiated the terms and language of the settlement over numerous months.  As the Court stated in *In re Copley Pharmaceutical, Inc.,* 1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998), "the skill required to perform the legal service presented by the instant case was great, particularly where class counsel were faced with opposing counsel of such high quality." Plaintiffs' counsel has proven equal to the task of working effectively and efficiently opposite Defendants' skilled counsel.

### D.    Negotiated Attorney's Fee Agreements Are Favored

The Parties agreed in the Agreement that the Court must approve attorneys' fees and expenses, and such fees and expenses shall not exceed $123,370.81.  Defendants have also agreed not to oppose counsel's request for approval of attorneys' fees.  Negotiated attorneys' fee agreements are favored in collective action settlements. Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. *See In re MDC Holdings Sec. Litig.,* [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement… , including the amount of the fee, it believes that if the

agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves."); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.").

In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986).

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *Id.* at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* "Markets know market values better than judges do." *Id.* at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer

what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." *Id.* at 572. Here, such a negotiation was feasible, and was conducted. The Settlement, including a fee payment, was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might award if the matter were litigated. Thus, the negotiated fee is entitled to a presumption of reasonableness.

### E. The Requested Costs Are Reasonable

In addition to the time he spent, Plaintiffs' counsel incurred $492 in costs and expenses in the pursuit of this litigation. See Rand Declaration. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 U.S. Dist. LEXIS 80118, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). The declaration of Plaintiffs' Counsel describes these expenses by category. These expenses were reasonably and necessarily incurred in the prosecution of this action. Accordingly, Plaintiffs' counsel respectfully requests that the Court award reimbursement of these expenses in full.

### VIII. THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFF AND THE ADMINISTRATOR FEE ARE BOTH REASONABLE AND SHOULD BE AWARDED

Class Counsel requests approval of a modest incentive award to the named Plaintiff, in the amount of $15,000. Defendants have agreed to this incentive award.

Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically awarded in similar litigation. This amount is within the range of incentive awards that have previously been approved by New York courts. *See, e.g.*, *Cohan v. Columbia Sussex Management, LLC*, No. CV 12-3203, 2018 WL 4861391, at *6 (E.D.N.Y. Sept.

28, 2018) (collecting cases approving incentive awards ranging from $7,500 to $30,000 and approving award of $10,000); *Ebbert v. Nassau County*, No. CV 05-5445, 2011 WL 6826121, at *19 (E.D.N.Y. Dec. 22, 2011) (approving incentive award of $20,000 to each named plaintiff). *See Fears v. Wilhelmina Model Agency, Inc.,* No. 02 Civ. 4911, 2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005) (collecting cases illustrating a range of incentive awards and approving an award of $25,000).

The incentive award requested are justified in light of the Plaintiff's' willingness to devote her time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred on the Settlement Class and should be approved. Here, the Named Plaintiff spent numerous hours working with Plaintiffs' Counsel to prosecute and settle the litigation. She should be rewarded for her courage and altruism in bringing a representative action. Accordingly, the incentive bonus is reasonable and should be approved.

Furthermore, the administrator fee of $10,000 is reasonable given the work it performed. See Administrator Dec. at ¶ 11.

**CONCLUSION**

For the foregoing reasons, Class Counsel and Defense Counsel respectfully ask that the Court grant this application in full and (i) finally certify the Class for purposes of settlement, (ii) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have received notice and have not timely opted out of the Class, (iii) approve the requested class counsel's fees and costs, the lead plaintiff incentive award and administrator costs, and (iv) enter final judgment in accordance with this Agreement and dismiss the Lawsuit with prejudice, retaining jurisdiction over the settlement. The parties request that the Court approve a final approval order and judgement in the form of Exhibit A hereto.

Dated:  New York, New York
        August 31, 2023

LAW OFFICE OF WILLIAM COUDERT RAND

S/William C. Rand

_____
William Coudert Rand, Esq. (WR-7685)
*Attorney for Plaintiffs*, Individually,
and on Behalf of All Other Persons Similarly Situated
501 Fifth Ave., 15th Floor
New York, New York 10017
Tel: (212) 286-1425